The PRECEDENT, AN INDIANA GENERAL PARTNERSHIP,
Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS,
Respondent.[1]

Nos. 49T10–9406–TA–00171,
49T10–9409–TA–00219.

Tax Court of Indiana.

Dec. 20, 1995.

---

**1.** The Precedent named the Washington Township Assessor as a respondent in this case, but did not serve summons on him in accord with Ind.Tax Court Rule 4(B). Consequently, the court does not have personal jurisdiction over the Washington Township Assessor and he is dismissed from this case.

Howard J. DeTrude, Jr., Fishers, for Petitioner.

Pamela Carter, Attorney General, Ted J. Holaday, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

### STATEMENT OF THE CASE

The Precedent appeals two final determinations of the State Board of Tax Commissioners (the State Board) assessing its land for the March 1, 1989, assessment and subsequent years.[2]

---

2. The Precedent appealed the assessment of 21 parcels of land for the 1989 assessment, 3 parcels of land for the 1990 assessment, 1 parcel of

### ISSUES

I. Whether the 1989 Marion County Land Valuation Order requires that the State Board assess The Precedent's land under the "Township—other" designation.

II. Whether the State Board is required to assess The Precedent's land at $1.50 per square foot—the lowest value prescribed for land being put to a "primary" use under the "Township—other" designation.

### FACTS & PROCEDURAL HISTORY

A. The Precedent's Land

The Precedent is an Indiana general partnership. It owns several parcels of land in Washington Township, Marion County, just north of a retail shopping area commonly referred to as "Keystone at the Crossing." The Precedent's land is bounded on the north by 96th Street, on the south by Priority Way Drive South, on the east by Delegates Row and Priority Way Drive East, and on the west by Priority Way Drive West.

On its land, The Precedent has constructed a number of one and two-story office buildings. The Precedent leases space in its office buildings to variety of small and medium-sized businesses, including a day care center, a bank, and numerous insurance companies.

B. The Precedent's Assessment

In accord with IND.CODE 6–1.1–4–13.6, the Marion County Land Valuation Commission and the State Board promulgated a land order for use by assessing officials in Marion County for the 1989 general reassessment and subsequent years. Section IV on page 87 of the land order contains a chart that identifies certain areas of concentrated commercial activity in Washington Township and prescribes a range of values within which land in those areas must be assessed. The chart provides:

land for the 1991 assessment, 1 parcel of land for the 1992 assessment, and 2 parcels of land for the 1993 assessment.

IV. Commercial Per Square Foot

| Area | Primary | | Secondary | | Usable Undeveloped | | Unusable Undeveloped | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Low Value | High Value | Low Value | High Value | Low Value | High Value | Low Value | High Value |
| Graham Rd & 71st (Rt 37) & So. on 37 to 61st | 2.00 | 2.50 | 1.40 | 1.75 | .60 | .75 | .05 | .05 |
| * * * * | | | | | | | | |
| Allisonville Rd W. to Keystone on 86th St. fr Dean Rd. Keystone No. to I–465 Interchng fr 86th St | 3.00 | 4.00 | 2.10 | 2.80 | .90 | 1.20 | .05 | .05 |
| Township—other | 1.50 | 3.00 | 1.05 | 2.10 | .45 | .90 | .05 | .05 |

*Page 87 of the 1989 Marion County Land Valuation Order* (submitted as *Respondent's Exhibit 1* ). Elsewhere, the land order provides that "[t]o establish the base rate for future developments and/or omissions of base rates for any geographic area not specifically identified in this order, the assessing official shall identify a *comparable area* and apply the base rate indicated by this order to the area in question." *Page 3 of the 1989 Marion County Land Valuation Order* (submitted as *Respondent's Exhibit 1* ) (emphasis added).

The Precedent's land is not within any of the areas specifically described in the chart on page 87 of the 1989 Marion County Land Valuation Order. Consequently, when it came time to assess The Precedent's land, the Washington Township Assessor sought to identify a "comparable area." He determined that The Precedent's land was comparable to the land within the area described on page 87 as "Allisonville Rd W. to Keystone on 86th St. fr Dean Rd. Keystone No. to I–465 Interchng fr 86th St" (hereafter referred to as the "Keystone at the Crossing" designation). He then assessed The Precedent's land at $3.00 per square foot—the lowest value prescribed for land being put to a "primary" use within the "Keystone at the Crossing" designation.

3. The Precedent filed 28 Forms 130, each covering a separate parcel of land for a separate tax year.

4. The Precedent filed one original tax appeal seeking review of the State Board's May 19, 1994, final determination with respect to parcels 8049314, 805052, 8053673, 8054781, 8055698, 8048906, 8001932, 8058813, and 8001933. The Precedent filed the other original tax appeal

C. The Precedent's Protest

The Precedent believed that its land had been improperly assessed. Specifically, it believed that its land should have been assessed under the "Township—other" designation. It also believed that its land should have been assessed at $1.50 per square foot—the lowest value prescribed for land being put to a "primary" use within the "Township—other" designation. Accordingly, it filed a number of Petitions for Review of Assessment with the Marion County Board of Review (Forms 130).[3] The Marion County Board of Review, however, declined to change The Precedent's assessment. The Precedent then filed a number of Petitions for Review of Assessment with the State Board (Forms 131). The State Board also declined to change The Precedent's assessment.

On June 30, 1995, and September 4, 1995, The Precedent filed two separate original tax appeals.[4] Because the issues in each appeal are identical, the appeals have been consolidated.

**STANDARD OF REVIEW**

██ "The State Board is accorded great deference when acting within the scope of its

seeking review of the State Board's July 20, 1994, final determination with respect to parcels 8001932, 8001933, 8053672, 8053962, 8053967, 8053053, 8053670, 8053671, 8053966, 8054457, 8053961, 803965, 8058180, and its July 25, 1994, final determination with respect to parcels 8056035, 8054458, 8055697, 8054457, and 8054458.

authority." *Wirth v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 613 N.E.2d 874, 876. "Accordingly, this court will reverse a final determination by the State Board only when it is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary or capricious." *Id.* The party appealing an administrative decision bears the burden to show that it is inaccurate. *Id.*

## DISCUSSION AND ANALYSIS

### I

■ The Precedent maintains that the 1989 Marion County Land Valuation Order requires that its land be assessed under the "Township—other" designation. It argues that the "Township—other" designation is a catch-all designation that encompasses and provides a base rate (value) for all commercial land in Washington Township not otherwise mentioned in Section IV on page 87. It acknowledges that the directive on page 3 instructs assessing officials to "identify a comparable area and apply the base rate indicated" in the case of land that is considered a "future development" and land for which no base rate (value) has been provided. *See Page 3 of the 1989 Marion County Land Valuation Order* (submitted as *Respondent's Exhibit 1* ).[5] It insists, however, that the directive does not apply in the case of its land because its land is not a "future development" and because a base rate (value) has been provided for its land via the "Township—other" designation.

The State Board argues that all commercial land not specifically identified in Section IV on page 87, such as The Precedent's land, must be assessed in the same manner as land in a "comparable area" in accord with the directive on page 3. The State Board acknowledges the "Township—other" designation, but insists that it is not a catch-all designation. Rather, the State Board explains, the "Township—other" designation is used only when no "comparable area" can be identified. Accordingly, the State Board

maintains that the 1989 Marion County Land Valuation Order requires it to attempt to identify a "comparable area" before resorting to the "Township—other" designation. The State Board further maintains that because the land within the "Keystone at the Crossing" designation is comparable to The Precedent's land, The Precedent's land was properly assessed.

■ Land orders are administrative rules. *Poracky v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 635 N.E.2d 235, 236. As such, they are subject to the same rules of construction as statutes. *Id.* In construing a land order, the first and foremost rule of construction is to ascertain and give effect to the land commission's intent, and the most reliable guide to that intent is the language of the land order itself. *See id.; Knauf Fiber Glass, GmbH v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 629 N.E.2d 959, 961.

Section IV on page 87 of the 1989 Marion County Land Valuation Order governs the assessment of commercial land in Washington Township. *Page 87 of the 1989 Marion County Land Valuation Order* (submitted as *Respondent's Exhibit 1* ). Contained within Section IV is the "Township—other" designation. The parties do not dispute that by use of the word "Township," the land commission was referring to Washington Township, for the words "Washington Township" appear at the top of the page. *Page 87 of the 1989 Marion County Land Valuation Order* (submitted as *Respondent's Exhibit 1* ). The parties do, however, dispute the meaning of the word "other." As noted above, The Precedent insists that by use of the word "other" the land commission meant all of the commercial land in Washington Township not otherwise identified in Section IV on page 87. The State Board, however, insists that by use of the word "other" the land commission did not intend to identify all of the otherwise unidentified commercial land in Washington

---

5. Specifically, the land order provides:
   To establish the base rate for *future developments and/or omissions of base rates for any geographic area not specifically identified* in this order, the assessing official shall identify a comparable area and apply the base rate indicated by this order to the area in question. *Page 3 of the 1989 Marion County Land Valuation Order* (submitted as *Respondent's Exhibit 1* ) (emphasis added).

Township, but was only acknowledging the fact that in promulgating the land order a base rate (value) for some areas of commercial land may have been inadvertently omitted.

In construing the language of a land order, courts must give words and phrases used their plain, ordinary, and usual meaning, unless it is apparent that the land commission intended some other meaning. *See Poracky,* 635 N.E.2d at 236; *Mechanics Laundry & Supply, Inc., v. Indiana Dep't of State Revenue* (1995), Ind.Tax, 650 N.E.2d 1223, 1228. The plain, ordinary, and usual meaning of a word is usually found in a dictionary. *Mechanics Laundry,* 650 N.E.2d at 1228. The word "other" is defined as "being the one (as of two or more) left: not being the one (as of two or more) first mentioned or of primary concern ... being the ones distinct from the one or those first mentioned or understood." *Webster's Third New International Dictionary* 1598 (1981). It is therefore logical to conclude that by use of the word "other," the land commission was referring to all commercial land in Washington Township distinct from the commercial land already identified in Section IV on page 87, just as The Precedent argues.

Nevertheless, words and phrases used in a land order may not be read in isolation, but must be read within the context of the land order of which they are a part. *See Poracky,* 635 N.E.2d at 236; *Miller v. Gibson County Solid Waste Management Dist.* (1994), Ind.Tax, 622 N.E.2d 248, 252. Further, all language used in a land order is presumed to have meaning. *See Poracky,* 635 N.E.2d at 236; *Althaus v. Evansville Courier Co.* (1993), Ind.App., 615 N.E.2d 441, 444. Citing these two rules of construction, the State Board argues that the phrase "Township—other" cannot be construed to mean all commercial land in Washington Township distinct from the commercial land already mentioned in Section IV on page 87. It explains that if all commercial land not

specifically described in Section IV on page 87 falls within the "Township—other" category, it is not necessary for assessing officials to identify a "comparable area," and as a result, the language on page 3 regarding "omissions of base rates" is rendered meaningless. The State Board thus concludes that its interpretation of the 1989 Marion County Land Valuation Order must prevail, for it harmonizes and gives effect to all of the provisions of the land order.

The State Board is correct in its assertion that if the "Township—other" designation provides a base rate (value) for all commercial land that is not otherwise identified in Section IV on page 87 and is not a "future development," then there is no need for assessing officials to identify a "comparable area and apply the base rate indicated" per the directive on page 3. This does not mean, however, that the directive's language regarding "omissions of base rates" is rendered meaningless. The 1989 Marion County Land Valuation Order is a lengthy document. While the language on page 3 instructing assessing officials to "identify a comparable area and apply the base rate indicated" in the case of land for which no base rate has been provided may not have application with respect to commercial land in Washington Township, it may have application elsewhere. For instance, there may be other townships without a catch-all category for commercial land, or there may be some areas of residential, agricultural, or industrial land in any of the various townships for which no base rate has been provided.[6] Consequently, the court is not persuaded that if the language regarding "omissions of base rates" in the directive on page 3 has no application with respect to commercial land in Washington Township, it has no application at all.

Given the plain, ordinary, and usual meaning of the phrase "Township—other" and the lack of evidence that the language regarding "omissions of base rates" in the directive on

---

6. Section I on pages 70 through 85 and Section V on page 87 of the 1989 Marion County Land Valuation Order govern the assessment of platted residential land and industrial acreage in Washington Township, respectively. Those sections do not contain a "Township—other" designation.

Consequently, there is no question that if an area of platted residential or industrial land in Washington Township is not specifically described in the order assessing officials must identify a "comparable area" and assess the land accordingly—there is no other option.

page 3 is rendered meaningless if it has no application with respect to commercial land in Washington Township, the court holds that the "Township—other" designation is a catch-all category and encompasses The Precedent's land. Accordingly, the court holds that the State Board is required to assess The Precedent's land under the "Township—other" designation.

## II

 Section IV on page 87 of the 1989 Marion County Land Valuation Order specifically gives assessing officials discretion to assess commercial land in Washington Township within a given range of values. Nevertheless, The Precedent argues that it is the practice of assessing officials to always apply the lowest value prescribed for land within a particular designation. To support its argument, The Precedent points to the testimony of the State Board's hearing officer who explained that "traditionally it [has] been practice to apply the low end of the land order...." *Trial Transcript* at 74. The Precedent thus insists that the State Board must assess its land at $1.50 per square foot—the lowest value prescribed for land being put to a "primary" use within the "Township—other" designation.

The State Board, however, notes that the hearing officer's testimony was that "traditionally it [has] been practice to apply the low end of the land order *unless there's something that makes that particular area more attractive than what you would expect to find." Trial Transcript* at 74 (emphasis added). This testimony, the State Board insists, establishes that it is *not* the practice of assessing officials to always apply the lowest value prescribed for land within a particular designation.

Given the fact that Section IV on page 87 of the 1989 Marion County Land Valuation Order specifically gives assessing officials discretion to assess commercial land within a prescribed range of values and the fact that the field officer's testimony acknowledges that the lowest value is not always applied, this court cannot conclude that The Precedent's land must be assessed at $1.50 per square foot as a matter of law.

### CONCLUSION

For the reasons stated above, the court holds that the State Board erred in assessing The Precedent's land. The State Board's final determinations are REVERSED, and the case is REMANDED to the State Board with instructions to assess The Precedent's land within the range of values prescribed for land being put to a "primary" use under the "Township—other" designation.